# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **A.M.H.,** | Case No. 3:26-cv-313-SI |
| Petitioner, | Agency No. AXXX-XXX-977 |
| v. | **ORDER** |
| **LAURA HERMOSILLO,** Seattle Field Office Director, U.S. Immigration and Customs Enforcement and Removal Operations; **KRISTI NOEM,** in her official capacity as Secretary, U.S. Department of Homeland Security; **PAMELA BONDI,** Attorney General of the United States; **TODD LYONS,** Acting Director of Immigration Customs Enforcement; **U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. DEPARTMENT OF JUSTICE;** and **EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**, | |
| Respondents. | |

**Michael H. Simon, District Judge.**

Petitioner A.M.H. is a citizen of Somalia. While living in Somalia, he faced threats of serious violence from Al-Shabaab, the terrorist group that murdered his brother in Mogadishu. On or about July 28, 2022, Petitioner entered the United States and was apprehended by U.S.

PAGE 1 – ORDER

immigration authorities. On August 4, 2022, Petitioner was issued an Immigration and Customs

Enforcement ("ICE") Form I-220A, release on his own recognizance. The ICE Form I-220A

specifically references 8 U.S.C § 1226, which applies when a noncitizen is placed in § 1229a

removal proceedings. *See generally* USCIS, FORM I-220A,

https://www.ice.gov/doclib/detention/checkin/ I_220A_OREC.pdf. (stating on page one that

"[y]ou have been arrested and placed in removal proceedings. In accordance with section 236 of

the Immigration and Nationality Act [codified at 8 U.S.C. § 1226] and the applicable provisions

of Title 8 of the Code of Federal Regulations, you are being released on your own

recognizance"). The I-220A form imposed various conditions on Petitioner's release, including

the use of an electronic monitoring device.

On or about October 21, 2022, Petitioner filed an application for asylum, which U.S.

Citizenship and Immigration Services ("USCIS") accepted. On May 7, 2023, USCIS referred

Petitioner's asylum application to immigration court. Petitioner filed pleadings with the

immigration court on August 9, 2023. At a master calendar hearing on August 6, 2024, the

immigration court scheduled a merits hearing on Petitioner's asylum application for January 19,

2028.

On May 3, 2024, USCIS granted Petitioner Temporary Protected Status ("TPS.") He

applied for renewal of TPS on September 11, 2024. As of the date of this Order, USCIS has

taken no action on the application for renewal of TPS; however, Respondents have recently

terminated TPS for Somalis.

On February 9, the Executive Office for Immigration Review ("EOIR") issued a notice of

a master calendar hearing for Petitioner for February 23, 2026. This was one of 12 such notices

sent by the Portland immigration court to Somalis, and only Somalis, on that date, with similar

orders issued to Somalis in Minnesota, Nebraska, and Illinois.

This master calendar hearing comes amidst important context. In May 2025, Respondent

Noem set an arrest quota for ICE and other federal agencies of 3,000 migrants per day. *See* Julia

Ainsley, et al., *A sweeping new ICE operation shows how Trump's focus on immigration is*

*reshaping federal law enforcement,* NBC NEWS (June 4, 2025),

https://www.nbcnews.com/politics/justicedepartment/ice-operation-trump-

focusimmigrationreshape-federal-lawenforcement-rcna193494; Brittany Gibson & Stef W.

Kight, *Scoop: Stephen Miller, Noem tell ICE to supercharge immigration arrests*, AXIOS (May

28, 2025), https://www.axios.com/2025/05/28/immigration-ice-deportations-stephen-miller;

Sean Hannity, *Stephen Miller says the admin wants to create the strongest immigration system in*

*US History*, FOX NEWS (May 28, 2025), https://www.foxnews.com/video/6373591405112.

Subsequently, Respondents launched an immigration enforcement operation in Oregon that set

an apparent quote of eight arrests per day per team of enforcement agents. *See e.g.*, Transcript of

Evidentiary Hearing at 259:25-261:12, *M-J-M-A v. Hermosillo*, No. 6:25-cv-02011-MTK (D. Or.

Dec. 3, 2025), Dkt. No. 55.

Respondents and their supervisors have targeted Somalis in particular. On Tuesday,

December 2, 2025, President Donald Trump made remarks in which he described Somali

nationals as "garbage" that he does not want in the United States. *See* Zolan Kanno-Youngs &

Shawn McCreesh, *Trump Calls Somalis 'Garbage' He Doesn't Want in the Country*, N.Y. TIMES

(Dec. 2, 2025), https://www.nytimes.com/2025/12/02/us/politics/trump-somalia.html. . Around

the same time, Respondents launched an aggressive immigration enforcement action called

"Operation Metro Surge" in Minnesota, home of the largest Somali community in the United

States. *See* Holmes Lybrand & Chris Boyette, *ICE to launch operation targeting Somali immigrants in Twin Cities, federal official says, as Trump calls community 'garbage'*, CNN (Dec. 2, 2025), https://www.cnn.com/2025/12/02/us/ice-operation-somali-migrants-minneapolis. The operation targeted Somali migrants in particular. *Id*.

Additionally, Respondents have terminated roughly one seventh of the Department of Justice's immigration judges. *See* Emily Ngo, *Immigration courts thrown into chaos as Trump administration purges dozens of judges*, POLITICO (Dec. 6, 2025), https://www.politico.com/news/2025/12/06/trump-immigration-court-judge-purges-00679376?cid=apn. Atypically, the Department of Homeland Security has taken an active role in recruiting their replacements, which they style as "deportation judges" in their recruiting advertisements. *See* ECF 1-3. Moreover, at least in Portland, these judges—officially employees of the Department of Justice—work in courts that display DHS posters encouraging individuals to "self-deport" and including depictions of apparent Hispanic migrants being arrested by government agents. ECF 3 ¶¶ 4-6; ECF 1 ¶¶ 49-51.

In combination, the unexpected master calendar hearing apparently including only Somalis, Respondents' recent targeting of Somalis, Respondents' use of seemingly arbitrary quotas for immigration arrests, Respondents' apparent efforts to transform immigration courts into deportation courts, and Respondents' recent history of transporting detainees across state lines, have made Petitioner concerned that the master calendar hearing is, in fact, designed to give Respondents an opportunity to detain Petitioner and remove him from the State of Oregon, substantially complicating his ability to effectively contest the lawfulness of his detention and eventual removal. Thus, Petitioner has filed a Petition for Writ of Habeas Corpus. ECF 1. He alleges that Respondents intend to revoke his release and detain him, which will violate the

Administrative Procedure Act ("APA") and his Fifth Amendment Due Process rights. He also has filed a Motion for Temporary Restraining Order, ECF 2, requesting that the Court prevent Respondents from removing Petitioner from the State of Oregon without notice to and approval from the Court (or, alternatively, from the State of Washington should Petitioner be in Washington when the TRO is issued). Petitioner also requests an order that Respondents show cause why this order should not be granted within three days.

**Standards**

Under the All Writs Act, 28 U.S.C. § 1651, the Court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Even if the Court's jurisdiction over Petitioner's claim may be subject to dispute by Respondents, which has not yet been determined, "[a] federal court has the power under the All Writs Act to issue injunctive orders in a case even before the court's jurisdiction has been established." *See ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 n.19 (5th Cir. 1978); *see also Belbacha v. Bush*, 520 F.3d 452, 455-56 (D.C. Cir. 2008) ("If a case presents a 'substantial' jurisdictional question, then under the All Writs Act, 28 U.S.C. § 1651, a district court may act to preserve its jurisdiction while it determines whether it has jurisdiction."). Accordingly, the Court may "issue status quo orders to ensure that once its jurisdiction is shown to exist, the court will be in a position to exercise it." *See ITT Cmty. Dev.*, 569 F.2d at 1359 n.19.

**Discussion**

"Until [last] year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." *Salcedo Aceros*, 2025 WL 2637503, at *3. The Trump administration, however, revised its § 1225 designation to "apply expedited removal to the *fullest extent authorized by*

*statute*." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). This included dismissing ongoing asylum cases and placing noncitizens into expedited removal, including those who previously had been released under § 1226(a) or paroled under § 1182(d)(5). *See, e.g.*, *Salcedo Aceros*, 2025 WL 2637503, at *4 ("Since mid-May of 2025, the Department of Homeland Security has made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. []If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision." (citation omitted)); *Rodriguez Cabrera v. Mattos*, 2025 WL 3072687, at *3 (D. Nev. Nov. 3, 2025) (describing DHS's "sweeping new policy [that] subjects *millions* of undocumented residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents to enable them to challenge the government's basis for detaining them." (emphasis in original)).

Courts overwhelmingly have rejected this process, whether the noncitizen originally was released under § 1226(a) or § 1182(d)(5), as unlawful. *Rodriguez Cabrera*, 2025 WL 3072687, at *3 (explaining that "[t]he overwhelming majority of district courts across the country, including this Court, that have considered the government's new statutory interpretation have found it incorrect and unlawful" (gathering cases)); *see also Perez v. LaRose*, 2025 WL 3171742, at *4 (S.D. Cal. Nov. 13, 2025) (gathering cases); *Faizyan v. Casey*, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (gathering cases).

Given Respondents' sweeping policy of revoking release and detaining asylum applicants, the unexplained scheduling of the master calendar hearing, the apparent inclusion

PAGE 6 – ORDER

only of Somalis in the hearing, and Respondents' recent targeting of Somalis, the Court finds

that Petitioner has shown a reasonable likelihood that his release will be revoked at the February

23 master calendar hearing. If Petitioner were arrested or detained for immigration purposes, he

would likely quickly be transferred out of the District of Oregon because there is no immigration

detention center in Oregon. If Petitioner were transferred out of the District of Oregon, it could

potentially create jurisdictional problems over Petitioner's habeas case challenging the merits of

the revocation of his release. Thus, the Court finds that it is necessary in aid of its jurisdiction

that Petitioner not be transferred out of the District of Oregon or deported, at least until the

parties have litigated the merits of Petitioner's Petition.[1] The Court denies as moot Petitioner's

temporary restraining order under Rule 65 of the Federal Rules of Civil Procedure, because the

relief granted under the All Writs Act is sufficient at this stage of the litigation. Petitioner may

---

[1] Courts around the country exercise their authority under the All Writs Act to maintain their jurisdiction over pending immigration matters by preserving the status quo. *See, e.g.*, *J.A.V. v. Trump*, 780 F. Supp. 3d 705, 708 (S.D. Tex. Apr. 24, 2025) (enjoining respondents under the All Writs Act from "transferring, relocating, deporting, or removing" any petitioner outside of the Southern District of Texas because "maintaining the status quo is required to afford the Court the ability to consider the request for a preliminary injunction and other forms of relief . . . and to prevent the immediate and irreparable injury that may occur with the immediate removal of any [petitioner]"); *Du v. U.S. Dep't of Homeland Sec.*, 2025 WL 1317944, at *1-2 (D. Conn. Apr. 24, 2025) (enjoining the defendants from removing and deporting any of the plaintiffs from the District of Connecticut in order to preserve the status quo and maintain the court's jurisdiction over the case pending ruling on the motion); *Doe v. Bondi*, 2025 WL 1870979, at *1-2 (S.D. Cal. June 11, 2025) (explaining that "[f]ederal courts retain jurisdiction to preserve the status quo while determining whether [they have] subject matter jurisdiction over a case and while a petition is pending resolution from the court" and finding that "a limited-duration stay to maintain the *status quo* is appropriate because it will allow the Court to hold a hearing and provide a reasoned decision to the request at hand"); *Batooie v. Ceja*, 2025 WL 1836695, at *2 (D. Colo. July 3, 2025) (enjoining the defendants from removing the petitioner from the District of Colorado pursuant to the All Writs Act and Rule 65(b) of the Federal Rules of Civil Procedure in order to preserve the court's jurisdiction); *E-C-R- v. Noem*, 2025 WL 2300543, at *1-2 (D. Or. July 16, 2025) (enjoining the same with respect to a plaintiff from the District of Oregon).

file a motion for preliminary injunction or renewed motion for TRO, if necessary and appropriate.

**Conclusion**

The Court ORDERS Respondents not to arrest, detain, or deport Petitioner based on his immigration status during the pendency of this case, absent further order of this Court. This Order is without prejudice to the Court considering the merits of parties' arguments in later briefing. The Court DENIES AS MOOT Petitioner's motion for temporary restraining order, ECF 2. The parties are directed to confer and submit a proposed briefing schedule for the Petition and any preliminary injunction motion. Petitioner shall promptly serve a copy of this Order upon Respondents and the United States Attorney for the District of Oregon, Scott Bradford (usaor.civilhabeas@usdoj.gov). The Court Clerk shall also serve a courtesy copy on the United States Attorney.

**IT IS SO ORDERED.**

DATED this 17th day of February, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge